USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: OCT 2 4 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ramon Hidalgo,

        Plaintiff,

—v—

3841 Hardware Inc., *et al.*,

        Defendants.

13-cv-6202 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    This is a single-plaintiff Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action for back pay and liquidated damages. On May 9, 2014—the day previously set for the close of fact discovery—Plaintiff Ramon Hidalgo submitted to the Court a letter stating:

> Discovery has not been completed because one of the Defendants, Juan Valiente, refuses to be deposed based on a settlement agreement that was allegedly signed by the Plaintiff without counsel present. The Plaintiff has denied signing any settlement agreement with any of the Defendants and has instructed me to move the case forward.

Dkt. No. 15. In response, Defendants submitted a letter asserting that "[t]he parties to this action, freely on their own, reached a settlement whereby Plaintiff accepted the sum of $15,000.00 in cash and executed and delivered to Defendants a general release." Dkt. No. 17. At the direction of the Court, the parties submitted briefing regarding the recognition and enforcement of the alleged settlement agreement, *see* Dkt. Nos. 28-30, and an evidentiary hearing was held to resolve significant factual disputes. For the reasons that follow, Defendants' request to enforce the release is granted, and the case is dismissed.

1

I.  **Background**

In their opening brief, Defendants asserted that "[t]he individual parties to this action, Ramon Hidalgo . . . and Altagracia Valiente and Juan Valiente . . . without their attorneys, agreed to settle the instant action." Def. Mem. 2.  Specifically, Defendants alleged that, during a meeting on or about April 14, 2014, Mr. Hidalgo proposed settling the case for $15,000, and Mr. Valiente agreed.  Juan Valiente Decl. ¶ 2.  Defendants further alleged that, on April 21, 2014, Plaintiff signed a release stating that Plaintiff, "as RELEASOR, in consideration of the sum of FIFTEEN THOUSAND ($15,000.00) DOLLARS, received from JUAN VALIENTE," releases and discharges Defendants from "all action, causes of action, suits, debts dues, sums of money, [etc.] . . . from the beginning of the world to the day of the date of this RELEASE." Juan Valiente Decl. Ex. 3.  Although his name appears on the release in signature form, Plaintiff denied ever signing the document or receiving any consideration in return, and instead asserted that the document is an "obvious forgery." Pl. Opp. 4.

In order to resolve the numerous disputed issues of fact concerning the putative settlement, an evidentiary hearing was held on August 1, 2014; August 21, 2014; and October 14, 2014.  *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 442 (2d Cir. 2005) (indicating that an evidentiary hearing had been held in order to determine "whether there had, in fact, been mutual assent" to a disputed settlement agreement); *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1278 (M.D. Ala. 2011) (citing *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994); *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975)) ("If material facts concerning the existence or enforceability of a settlement agreement are in dispute, the court holds a plenary hearing to determine the enforceability of that settlement."). On behalf of Plaintiff, the Court received the testimony of Plaintiff Ramon Hidalgo and

handwriting expert, Richard Picchiochi. On behalf of Defendants, the Court received the testimony of Defendants Juan Valiente and Altagracia Valiente; non-party witnesses Maria Cepin and Manuel Montes de Oca; and handwriting expert Robert Baier.

I. **Findings of Fact**

The Court finds, on the basis of clear and convincing evidence, that Plaintiff signed the release in question. In addition to the putative release itself, which was received at the hearing as Exhibit Q1, both Maria Cepin and Juan Valiente testified that they witnessed Plaintiff sign the document in Ms. Cepin's office on April 21, 2014, in exchange for $3,000 and the promise of $12,000 to follow the next day. *See* Tr. 112:23-117:25; 226:22-231:18. Mr. Valiente further testified that, on April 22, he met Plaintiff at a Chase bank and a nearby restaurant to hand over the outstanding $12,000. *See* Tr. 237:9-11. The Court found Ms. Cepin's testimony to be particularly credible, based upon her non-party status, her demeanor, and the directness and detail of her responses to examination. Mr. Valiente and Ms. Cepin's testimony was, furthermore, consistent with Defendants' prior sworn statements, *see* Altagracia Valiente Decl. ¶¶ 2-6; Juan Valiente Decl. ¶¶ 4-7, and corroborated by video evidence. *See* Exs. 2, 3. One video, taken on April 22 at a Chase bank, shows Mr. Hidalgo, his wife Yael Montes de Oca, and another woman meeting Mr. and Mrs. Valiente, and Mrs. Valiente withdrawing cash and depositing it in an envelope. Ex. 2. In another, taken shortly after the first at a nearby restaurant, Mr. Valiente is seen counting the money in the envelope and handing it to Ms. Montes de Oca, who then hands it to Plaintiff. Ex. 3.

By contrast, Plaintiff's account of the events in question was not supported by any credible evidence. The testimony of the handwriting experts regarding the authenticity of the signature on the release was inconclusive, and Plaintiff's own expert testified that the signature

3

on the release bore the major signs of disguised handwriting—*i.e.*, was consistent with Plaintiff having signed the document himself, in his own name, while attempting to alter his handwriting. *See* Tr. 97:12-18; *see also* Tr. 116:21-24 (Ms. Cepin's testimony that Plaintiff signed his name in an unusual manner).

The Court was also unpersuaded by Plaintiff's testimony that he had not been to Ms. Cepin's office or signed the release in question. *See, e.g.,* Tr. 51:15-19. During his testimony, the Court observed Plaintiff to be evasive in his body language and demeanor. Plaintiff was, moreover, unable to offer any plausible alternate explanation for the video evidence corroborating the testimony of Ms. Cepin and Mr. Valiente. In addition to suffering from the previously discussed problems with demeanor and body language, Plaintiff's testimony that the videos depict him guaranteeing a loan from the Valientes to his wife Ms. Montes de Oca, to be deducted "from [his] lawsuit," Tr. 33:15-34:22, raised several red flags indicative of a lack of credibility. First, Plaintiff had previously alleged that he was so "estranged" from his wife that her very involvement with the alleged settlement should be viewed by the Court as suspicious, *see* Pl. Opp. 6-8, a depiction of the marital relationship that is wholly inconsistent with Plaintiff guaranteeing a loan on her behalf. Second, at the time of the alleged loan, Plaintiff was suing the Valientes, and the Court is skeptical that such a transaction could have taken place under the circumstances. Third, the allegations regarding the loan were made for the first time during the evidentiary hearing, only *after* Defendants had produced video evidence that Plaintiff and his wife had accepted money from the Valientes on April 22. *See* Pl. Opp. 8 (arguing that Defendant's version of events was not supported by sufficient evidence, but failing to provide any alternate explanation). This despite the fact that Juan Vailente plainly described the meetings depicted in the videos in a prior sworn statement, submitted as an attachment to his

4

opening brief. *See* Juan Valiente Decl. ¶¶ 4-7. In sum, the content and form of Plaintiff's testimony demonstrated an absence of credibility, and the Court accordingly assigns it no weight at all.

A necessary corollary of the finding that Defendants' version of events is true is the finding that Plaintiff's version of events is false. That is, the Court concludes that to the extent that Plaintiff denied having signed the release in his affidavit, deposition testimony, and during the evidentiary hearing, he gave false testimony. The Court further finds that Plaintiff did so willfully, as his refusal to admit that he attended the April 21 meeting at Ms. Cepin's office and signed the release cannot be attributed to misunderstanding or faulty memory. Rather, these falsehoods can be explained only by an intention to mislead the Court.

## II.   Discussion

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Rahman v. Kaplan Cornelia, Inc.*, No. 12-cv-9095 (SN), 2014 WL 541851, at *3 (S.D.N.Y. Feb. 11, 2014) (quoting *Meetings & Expositions Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)). In determining whether the release in question is enforceable, the Court must look to "principles of contract law." *Golden Pacific Bancorp. v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)); *see also Omega*, 432 F.3d at 443 ("A settlement agreement is a contract that is interpreted according to the general principles of contract law."). Under New York law, "[a] party is bound by his or her signature on a release containing language that is clear and ambiguous, unless cause exists sufficient to invalidate a contract, such as duress, illegality, fraud or mutual mistake," *Lodhi v. Stewart's Shops Corp.*, 861 N.Y.S.2d 160, 162 (3d Dep't 2008) (citations omitted); *accord. Booth v. 3669 Delaware, Inc.*, 92 N.Y.2d

934, 935 (1998).

Applying these principles, the Court concludes that Plaintiff is bound by the terms of the release. As set forth above, the Court finds that Plaintiff signed the release, notwithstanding his assertions to the contrary. The Court further finds that the language of the release clearly and unambiguously releases Defendants from any liability to Plaintiff, including liability for any violations of the FLSA or NYLL. *See* Ex. Q1. Plaintiff has, furthermore, failed to prove any "cause sufficient to invalidate a contract, such as duress, illegality, fraud or mutual mistake." *Lodhi*, 861 N.Y.S.2d at 162 (finding that the plaintiff's claim was barred by release, notwithstanding her attorney's failure to "explain the release or its import or permit her sufficient time to read the document"). Accordingly, the Court concludes that Plaintiff is bound by the terms of the release, and that his claims against Defendants must be dismissed.

The Court is not persuaded otherwise by Plaintiff's argument that "the settlement agreement [is not] fair and reasonable as required by the [FLSA]." *See* Pl. Opp. 9-10. Although the settlement is likely fair and reasonable, without engaging in the "fair and reasonable" analysis typical in settlement of disputed FLSA claims, the Court concludes that the unique circumstances surrounding the execution of the release justify dismissal of Plaintiff's claims in this case. Despite several warnings from the Court regarding the consequences of perjury, *see* Tr. 10:17-11:11; 152:21-153:7, 290:13-20, Plaintiff repeatedly and willfully gave false testimony regarding the execution of the release, *see* Hidalgo Decl. ¶¶ 12-13; Tr. 48:11-52:8. This false testimony, furthermore, resulted in a months-long delay in the litigation and the expenditure of significant resources by the Court, including motion practice and a three-day evidentiary hearing. Such "[f]alse testimony in a formal proceeding is intolerable" and must be "neither reward[ed] nor condon[ed]." *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 323 (1994). Thus, even

assuming *arguendo* that enforcement of the release was not consistent with the FLSA, dismissal would nevertheless be justified by Plaintiff's egregious conduct. *Cf. Radecki v. GlaxoSmithKline*, 646 F. Supp. 2d 310, 317-18 (D. Conn. 2009) (finding dismissal an appropriate sanction where clear and convincing evidence established that plaintiff had committed perjury in the course of trial), *aff'd*, 375 F. App'x 46 (2d Cir. 2010).

### III.  Conclusion

For the foregoing reasons, Defendant's request to enforce the release is granted and Plaintiff's claims are dismissed. The Clerk of Court is requested to terminate this case. This resolves Dkt. No. 22.

SO ORDERED.

Dated: October 24, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge